Filed 9/11/23  P. v. Bullock CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DONALD LAVON BULLOCK,<br><br>    Defendant and Appellant. | 2d Crim. No. B317374<br>(Super. Ct. No. 18F-06859)<br>(San Luis Obispo County) |

Donald Lavon Bullock appeals the judgment entered after a jury convicted him of battery on a non-confined person by a prisoner (Pen. Code,[1] § 4501.5) and resisting an executive officer (§ 69).  In a bifurcated proceeding, the trial court found true allegations that appellant had a prior 2009 conviction for active gang participation (§ 186.22, subd. (a) (hereinafter § 186.22(a)) that qualified as both a strike (§ 1170.12, subds. (b), (c)) and a

---

[1] All undesignated statutory references are to the Penal Code.

serious felony (§ 667, subd. (a)).[2]  The court sentenced him to an aggregate term of eight years and eight months in state prison, consisting of the upper term of four years on the battery count doubled for the strike prior, plus a consecutive eight-month term on a prior 2017 conviction for resisting an executive officer.  The prior serious felony enhancement was stricken pursuant to section 1385.

Appellant raises claims of instructional error and insufficient evidence and contends he is entitled to the retroactive benefit of two recent statutory amendments relating to his sentencing.  He also asks us to review the sealed records of the in camera proceedings on his *Pitchess*[3] motion.

We agree with appellant that the true findings on the prior strike and serious felony conviction allegations must be reversed because the evidence is insufficient to prove he committed the underlying gang participation offense with another gang member.  (*People v. Rodriguez* (2012) 55 Cal.4th 1125, 1138-1139 (*Rodriguez*); *People v. Strike* (2020) 45 Cal.App.5th 143, 150-151, review denied June 10, 2020, S261815 (*Strike*); *People v. Farias* (2023) 92 Cal.App.5th 619 (*Farias*).)  Accordingly, we shall reverse the prior conviction findings, vacate appellant's sentence, and remand for retrial of the prior conviction allegations and resentencing.  Otherwise, we affirm.

---

[2] The jury also found not true a great bodily injury allegation (§ 12022.7) attendant to the battery charge of which he was convicted (count 1), and acquitted him of two other batteries charged in counts 2 and 3.

[3] *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*).

## STATEMENT OF FACTS

### *Prosecution*

On March 26, 2018, appellant was an inmate at the California Men's Colony (CMC) as an enhanced outpatient (EOP) and as an individual with developmental disabilities (DDP). Correctional Officer Ernest Rogers II[4] saw appellant and four other inmates standing together in the yard, in violation of rules prohibiting gatherings of more than four inmates. Rogers and Correctional Officer Vanessa Castillo approached the group and Rogers told them to disperse. The other four inmates complied, but appellant followed Rogers and yelled at him. Rogers took appellant's ID card to write him up for a rules violation.

Appellant called Rogers a racist and said "I'm DDP, n****r. I ain't got to listen to you." Rogers walked away towards the Program Office and appellant followed him. After appellant "g[o]t in [Rogers's] face," Rogers pulled out his oleoresin capsicum (OC) spray and ordered appellant to cuff up. Appellant did not comply, so Rogers called a Code 1 (which signals a disruptive inmate) and asked Castillo to place appellant in handcuffs. Castillo handcuffed appellant and walked him into the Program Office.

Floercky and Hedrick took custody of appellant inside the Program Office. Hedrick then walked appellant to a temporary holding cell and attempted to conduct a clothed search. Appellant became more agitated and resistive, said "fuck this," and tried to break free by thrashing his upper body left and right.

---

[4] Rogers was the victim of the battery and resisting charges of which appellant was convicted. CMC Correctional Officers Bartel Floercky and Charles Hedrick were the alleged victims of the two battery charges of which he was acquitted.

Appellant swung his right elbow back to hit Floercky in the chest, then attempted to run down the hallway back towards the yard. Hedrick and Floercky tried to take appellant to the ground. Hedrick fell and hit his head and back against the wall and appellant fell on top of Hedrick. While still on the ground, appellant continued to thrash his body around.

Rogers attempted to place restraints on appellant's ankles. Appellant looked directly at Rogers, pulled his leg up toward his chest, and kicked Rogers in the knee, causing Rogers to fall on top of him. As a result of the incident, Rogers suffered a knee sprain that required therapy and caused him pain for several months.

Rogers denied telling Hedrick that a body search of appellant was pointless and that appellant needed to be taken down to a prone position. Rogers also denied telling appellant, "I'm not your n****r, boy." Hedrick denied threatening to take appellant down and said he did not hear anyone else make such a threat.

### Defense

Castillo testified that appellant became agitated after Rogers asked him for his ID card. Rogers told appellant to "cuff up" but appellant refused, which prompted Rogers to point his OC spray at appellant's chest. Appellant still did not want Rogers to handcuff him, but allowed Castillo to do so.

After Castillo took appellant to the Program Office and transferred custody of him to Hedrick, she saw Hedrick attempt to conduct a clothed search of appellant. Appellant was agitated, kept moving his head back, and was not listening to the officers' orders. He attempted to get away and Hedrick and Floercky tried to calm him down. Appellant was taken to the floor and

4

Castillo held appellant' legs while Rogers applied leg restraints. Although she did not see appellant kick Rogers and did not see Rogers fall, she did not have a clear view of the incident and mostly saw appellant's back.

Appellant testified that he was standing in the yard with three other inmates when another inmate approached them. Appellant's group told the inmate they could not gather in a group of five. The entire group was already in the process of dispersing when Rogers approached them. Appellant had walked about 25 steps away when Rogers called him back and took his ID card. Appellant called Rogers a "n***a," which appellant considers a term of endearment. Rogers responded "I'm not your n****r, boy," which made appellant angry because "n****r" is a racist slur. Appellant believed that Rogers was unfairly targeting him, so he said "fuck you, pig" and "'f' the police" and told Rogers he did not have to listen to him.

Rogers walked away, but appellant followed him because he needed to retrieve his ID to obtain his medication. Appellant sat on a table inside the Program Office and waited to see if Rogers was going to return his ID. Rogers pulled out his OC spray and ordered appellant to cuff up. Appellant refused to comply because he thought Rogers was a racist and had targeted him for mistreatment. Although appellant refused to follow Rogers's orders, he complied with Castillo's order to cuff up.

Hedrick and Floercky told appellant to face forward while Hedrick was searching him, but he refused to comply because he wanted to see if they were trying to plant weapons or drugs on him. Appellant heard Rogers tell Hedrick and Floercky "why they searching me [*sic*], they was going to take me down." Appellant interpreted this to mean they were going to "slam[] me

5

on top of my head." Although Hedrick and Floercky "barely" had their hands on him, he feared for his life so he took off running.

Appellant denied kicking Rogers and claimed he stopped struggling as soon as he was told to do so. Appellant admitted, however, that he was "aggravated" while he was in the Program Office and that when he is aggravated he "see[s] red" and has no control over his actions.

Appellant also admitted having seven prior felony convictions, including a 2017 guilty plea conviction for an assault against another CMC staff member. In that incident, the officer reported that appellant had "headbutted" him and had to be taken to the ground for thrashing around and resisting. Appellant acknowledged that he called the officer a "n***a" in a derogatory manner and claimed he only later started using the word as a term of endearment.

### Rebuttal

On rebuttal, one of the officers involved in the 2017 staff assault testified that appellant had resisted and thrashed his body left and right in an attempt to break free. The officer also saw appellant make a headbutt movement toward the victim and subsequently saw a red mark on the victim's forehead.

## DISCUSSION

## I.

### Alleged Instructional Error

Appellant contends the trial court violated his due process rights by refusing his request to instruct the jury on the lawful performance of a custodial officer (CALCRIM No. 2671) and self-defense (CALCRIM No. 3470), and refusing to include bracketed portions of the instructions given on resisting an executive officer in the performance of duty (CALCRIM No. 2652), resisting a

peace officer (CALCRIM No. 2656), and battery by a prisoner on a non-confined person (CALCRIM No. 2723) to pinpoint his theory of self-defense. We are not persuaded.

"[A] trial court may properly refuse an instruction offered by the defendant if it incorrectly states the law, is argumentative, duplicative, or potentially confusing [citation], or it if is not supported by substantial evidence [citation]." (*People v. Moon* (2005) 37 Cal.4th 1, 30.) The trial court declined to give appellant's requested instructions after concluding they were not supported by substantial evidence. We review that ruling de novo (*People v. Manriquez* (2005) 37 Cal.4th 547, 581) and agree with the court's conclusion.

Appellant's claim of self-defense was premised on the assertion that Rogers was not lawfully performing his duties when the incident occurred. CALCRIM No. 2671 makes clear, however, that appellant had no right to resort to self-defense against Rogers unless Rogers was subjecting him to excessive or unreasonable force. (See *People v. Ghebretensae* (2013) 222 Cal.App.4th 741, 759, disapproved on other grounds in *People v. Bryant* (2021) 11 Cal.5th 976, 986, fn. 5; *People v. Gutierrez* (2009) 174 Cal.App.4th 515, 520.)

Appellant concedes both below and on appeal that none of the officers used excessive or unreasonable force against him. He nevertheless claims that the officers' words and actions gave rise to an objective reasonable belief that the use of excessive force against him was imminent. (See *People v. Minifie* (1996) 13 Cal.4th 1055, 1064 [recognizing that self-defense may be used against a threat of imminent harm].) He asserts among other things that Rogers is a "large" man who "targeted and harassed"

7

him, "pointed a chemical agent at appellant's face", and purportedly "order[ed] the other officers to 'take down' appellant."

We agree with the trial court that appellant failed to identify evidence from which the jury could have found he had an objective reasonable belief that he faced an imminent threat of harm, such that he was justified in resorting to self-defense. Appellant admitted he was not following the officers' orders and was moving his head around when Rogers purportedly said they were going to "take him down." "It is well established that the ordinary self-defense doctrine—applicable when a defendant reasonably believes that his safety is endangered—may not be invoked by a defendant who, through his own wrongful conduct . . . has created circumstances under which his adversary's attack or pursuit is legally justified." (*In re Christian S.* (1994) 7 Cal.4th 768, 773, fn. 1, italics omitted.) Appellant also admitted that Hedrick "barely" had his hands on him when Rogers purportedly made the comment about taking him down and that Floercky was "barely" holding a piece of his coat.

Even assuming that the requested instructions should have been given, the error would be harmless. The California Supreme Court has yet to decide whether the failure to instruct on a requested affirmative defense supported by substantial evidence is federal constitutional error or state law error. (*People v. Gonzalez* (2018) 5 Cal.5th 186, 199.) We conclude that any error here was harmless regardless of the standard of review. Appellant's claim of self-defense was incredible and implausible and the evidence that he was guilty of the crimes of which he was convicted was overwhelming. (*People v. Salas* (2006) 37 Cal.4th 967, 972, 984 [error in failing to instruct on affirmative defense nonprejudicial when evidence of guilt is overwhelming].)

## II.

### *Prior Strike And Serious Felony Allegations*

#### a. Rodriguez

Appellant contends the trial court's true findings on the prior strike and serious felony allegations must be reversed because the evidence offered to prove his underlying 2009 conviction for active gang participation (§ 186.22(a)) is insufficient to establish that he committed the offense with another active member of his gang, as provided in *Rodriguez, supra*, 55 Cal.4th 1125.  We agree.

"'The People must prove all elements of an alleged sentence enhancement beyond a reasonable doubt.  [Citation.]'  [Citation.]  In identifying the facts proven by the existence of a prior conviction, '[t]he trial court's role is limited to determining the facts that were necessarily found in the course of entering the conviction.  To do more is to engage in "judicial factfinding that goes far beyond the recognition of a prior conviction."'  [Citation.]  'On review, we examine the record in the light most favorable to the judgment to ascertain whether it is supported by substantial evidence.  In other words, we determine whether a rational trier of fact could have found that the prosecution sustained its burden of proving the elements of the sentence enhancement beyond a reasonable doubt.'  [Citation.]"  (*Farias, supra*, 92 Cal.App.5th at p. 641.)

Section 186.22(a) makes it unlawful to "actively participate[ ] in a criminal street gang with knowledge that its members engage in, or have engaged in, a pattern of criminal gang activity, and [to] willfully promote[ ], further[ ], or assist[ ] in felonious criminal conduct by members of that gang."  Pursuant to section 1192.7, "any felony offense, which would also

9

constitute a felony violation of section 186.22," qualifies as both a prior serious felony and a prior strike offense.  (§§ 667, subds. (d)(1), (e), 1192.7, subd. (c)(28).)

In 2012, our Supreme Court held that section 186.22(a) is not violated when an active gang member commits a felony offense but acts alone.  (*Rodriguez*, *supra*, 55 Cal.4th at p. 1139.) In *Strike*, *supra*, 45 Cal.App.5th 143, our colleagues in the Fourth District recognized that this "change in the interpretation of section 186.22(a) rendered a pre-*Rodriguez* conviction inconclusive on its face as to whether it qualified as a strike." (*Strike*,  at p. 150.)  In *Farias*, *supra*, 92 Cal.App.5th 619, our colleagues in the Third District reached the same conclusion with regard to section 667, subdivision (a) prior serious felony allegations.  (*Farias*, at pp. 647-648.)

The appellant in *Strike* pleaded guilty in 2007 to active gang participation under section 186.22(a).  After he admitted the prior conviction in a 2017 prosecution, the trial court found the admission extended to the elements of section 186.22(a) "as now understood" based on the allegations in the 2007 charging document that a codefendant was a member of Strike's gang. (*Strike*, *supra*, 45 Cal.App.5th at pp. 146-147.)  Because the record did not show Strike had admitted the factual allegations contained in the 2007 charging document as part of his guilty plea, the court of appeal concluded that the trial court had engaged in impermissible factfinding.  (*Id.* at pp. 152-153.)  The court reasoned that the trial court had "'invade[d] the jury's province by . . . mak[ing] disputed findings about "what a trial showed, or a plea proceeding revealed, about the defendant's underlying conduct.""'  (*Id.* at p. 152.)  The matter was remanded for a new hearing on the prior strike for the prosecution to

demonstrate, based on the record of the 2007 proceeding, that the defendant's guilty plea encompassed a relevant admission in light of *Rodriguez*'s clarification that the defendant must have committed the offense with at least one other gang member. (*Strike*, at p. 154.) A similar result was reached in *Farias* regarding a prior serious felony conviction allegation for which there was no evidence offered to prove the defendant had admitted committing the offense with another active member of his gang. (*Farias*, *supra*, 92 Cal.App.5th at pp. 647-648.)

Here, the People offered no evidence to prove appellant acted with another member of his gang in committing the section 186.22(a) offense upon which his prior strike and serious felony conviction allegations are based. The People introduced certified prior conviction and commitment packets, both of which merely demonstrated that in 2009 appellant had pleaded guilty to a violation of section 186.22(a). It is thus clear that the evidence is insufficient to prove the prior strike and serious felony conviction allegations.

Although the People urge us to reject *Strike*, they do not address *Farias*, which follows *Strike* and correctly disposes of the very same arguments raised by the People in this case. (*Farias*, *supra*, 92 Cal.App.5th at p. 648.) Because the evidence is insufficient to prove the truth of the prior strike and serious felony conviction allegations, those findings must be reversed. The People, however, are entitled to retry the matter and have stated they intend to do so. (*Strike*, *supra*, 45 Cal.App.5th at p. 154.) Accordingly, we shall reverse the prior conviction findings, vacate appellant's sentence, and remand for retrial of the prior conviction allegations and resentencing.

11

### b. AB 333

Appellant alternatively contends the true findings on his prior conviction allegations must be reversed for insufficient evidence and that the matter must remanded for retrial of those allegations pursuant to recent amendments to section 186.22 effected by AB 333, which went into effect after his sentencing.

"[A]ny felony offense, which would also constitute a felony violation of Section 186.22," is a strike. (§ 1192.7, subd. (c)(28).) AB 333 (2021-2022 Reg. Sess.), which went into effect on January 1, 2022, made several changes to section 186.22. Among other things, AB 333 ""'narrows the definition of "'criminal street gang'" to 'an *ongoing, organized association or group* of three or more persons, whether formal or informal, having as one of its primary activities the commission of one or more [enumerated criminal acts], having a common name or common identifying sign or symbol, and whose members *collectively* engage in, or have engaged in, a pattern of criminal gang activity.""'" (*People v. Scott* (2023) 91 Cal.App.5th 1176, 1180 (*Scott*).)

Because AB 333 is ameliorative, it applies retroactively "to all convictions not yet final on its effective date. [Citation.]" (*Scott*, *supra*, 91 Cal.App.5th at p. 1181.) Appellant's prior 2009 conviction for violating section 186.22(a) has long since become final more than a decade before AB 333 went into effect. Appellant nevertheless contends that because the judgment containing the true findings on his prior strike and serious felony conviction allegations is not final, he is entitled to the retroactive benefit of AB 333 such that his prior conviction allegations must be retried under the new version of the law. We agree with *Scott* that AB 333 does not apply in these circumstances.

"The three strikes law provides:  'Notwithstanding any other law . . . :  [¶]  . . .  The determination of whether a prior conviction is a prior serious or violent felony conviction for purposes of this section shall be made upon the date of that prior conviction . . . .'  (§ 1170.12, subd. (b)(1); accord, § 667, subd. (d)(1).)  In other words, 'the Legislature intended that the qualifying status of a conviction would be *fixed* upon the date of the prior conviction . . . .'  [Citation]  This 'mean[s] that the court is presently required to look backward to see if, at the time of the conviction of the past offense, such past offense qualified as a serious or violent offense . . . .'  [Citation.]  It therefore does not matter if the definition of a strike has subsequently changed."  (*Scott*, *supra*, 91 Cal.App.5th at pp. 1181-1182.)

Appellant's 2009 conviction for violating section 186.22(a) "is long since final.  When it became final, it was a strike.  The fact that the Legislature has changed the definitions of active gang participation . . . under section 186.22 cannot change the status of [appellant's] final 2009 conviction as a strike prior."  (*Scott*, *supra*, 91 Cal.App.5th at p. 1184.)  Appellant's arguments to the contrary are unavailing.  His claim that AB 333 retroactively applies to his prior conviction thus fails.[5]

### Pitchess

Appellant asks us to review the sealed transcript of the hearing on his *Pitchess* motion.  *Pitchess* "allow[s] criminal

---

[5] Because we conclude that AB 333 does not retroactively apply to appellant's final 2009 conviction for violating section 186.22(a), the People's contention that AB 333 is unconstitutional is moot.  (See *Scott*, *supra*, 91 Cal.App.5th at p. 1185.)

defendants to seek discovery from the court of potentially exculpatory information located in otherwise confidential peace officer personnel records. If a party bringing what is commonly called a *Pitchess* motion makes a threshold showing, the court must review the records in camera and disclose to that party any information they contain that is material to the underlying case. (See Evid. Code, §§ 1043, 1045.)" (*People v. Superior Court* (*Johnson*) (2015) 61 Cal.4th 696, 705.) We review the trial court's ruling on the motion for abuse of discretion. (*People v. Prince* (2007) 40 Cal.4th 1179, 1285.)

Appellant filed a *Pitchess* motion seeking discovery of information regarding Officers Rogers, Hedrick and Flores relevant to allegations of writing false reports and/or receiving discipline for writing such reports, as well as any reports they wrote that resulted in an inmate being charged with resisting an executive officer or battery on a non-confined person by a prisoner. The court determined that appellant was entitled to discover any complaints regarding the officers' credibility and any complaints within the past five years alleging excessive force. After reviewing the potentially discoverable records at an in camera hearing, the court determined that one inmate's staff complaint was potentially relevant to appellant's defense and ordered that the complainant's name and contact information be disclosed to the defense.

After reviewing the sealed transcripts of the in camera hearing, we are satisfied that the trial court did not abuse its discretion. (See *People v. Samayoa* (1997) 15 Cal.4th 795, 827 ["Our independent in camera review . . . reveals no materials so clearly pertinent to the issues raised by the *Pitchess* discovery

14

motion that failure to disclose them was an abuse of *Pitchess* discretion"].)

## DISPOSITION

The trial court's true findings on the prior strike and serious felony allegations are reversed and appellant's sentence is vacated.  We remand the matter for retrial of the prior conviction allegations and resentencing.  In all other respects, the judgment is affirmed.

<u>NOT TO BE PUBLISHED.</u>

CODY, J.

We concur:

GILBERT, P. J.

BALTODANO, J.

Jacqueline H. Duffy, Judge
Superior Court County of San Luis Obispo

_____


Nancy Wechsler, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Scott A. Taryle, Supervising Deputy Attorney General, Stefanie Yee, Deputy Attorney General, for Plaintiff and Respondent.